Carroll Gene LYNCH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 22, 1971.

Frank E. Haddad, Jr., Louisville, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Carroll Gene Lynch appeals from a judgment sentencing him to life imprisonment on each of two felony counts enhanced by two previous felony convictions. KRS 431.190.

The first count of the indictment charged that on August 22, 1969, Lynch operated a motor vehicle without the knowledge and consent of its owner, one John L. Peters. KRS 433.220. The second charged him with armed robbery of a bank on the same day. KRS 433.140. The third alleged previous convictions for storehouse breaking (KRS 433.190) in 1960, and both storehouse breaking and possession of burglary tools (KRS 433.120) in 1958.

At about 11:00 A.M. on August 22, 1969, three masked men held up a bank at the corner of Southern Parkway and Woodlawn Avenue in Louisville. They arrived and departed in a yellow 1968 model Mercury Cougar automobile. According to the bank manager, the tallest of the robbers was about six feet two inches tall and was armed with a shotgun.

On the same morning at about 10:45 Officer Lawrence Pilson of the Louisville Police Department, who was off duty, after having been at this same bank to transact some personal business, went to the Hazelwood Shopping Center to pick up some clothing at a dry-cleaner's and then drove east on Woodlawn Avenue to Southern Parkway, where he stopped behind two other cars waiting for the traffic light at the intersection to change. While in this position he noticed a 1968 model yellow Cougar automobile turn the corner from Southern Parkway in front of the bank and proceed westward on Woodlawn Avenue. As it passed, he observed two men in

the front seat and one in the back, all wearing "what looked like little hats with what I would term masks pushed up—something that appeared to be a stocking or towel pushed up around their head." Pilson got "a real good look" at the driver and, being suspicious of a holdup or attempted holdup, sought to get the license number of the car but was unable to do so because there was a piece of white paper over the space where the license plate was supposed to be. The officer turned his car around as soon as he could and tried to follow the yellow automobile but could not find it. In the process, he met up with another officer in a police car and together they heard a radio report of the robbery. As they continued searching in the neighborhood for the yellow Cougar someone waved at them and reported "that the car had gone in behind some apartments there." They drove into an alley and found the yellow Cougar abandoned behind an apartment house.

Within 30 minutes after these events took place Pilson went to police headquarters and identified Lynch from a group of eight different photographs or "mug shots." Early that afternoon he identified him in a police line-up of six persons. Again at the trial he positively identified him as the man driving the yellow Cougar when it passed him on Woodlawn Avenue immediately after the robbery.

Lynch's defense was an alibi. He denied having been in the vicinity of the bank at the time it was robbed, denied any knowledge of or connection with a yellow Cougar automobile, and had witnesses to prove he was elsewhere.

For reasons not revealed in the record the police were on the lookout for Lynch almost immediately after the robbery and this information was promptly communicated to him, whereupon he telephoned police headquarters and voluntarily appeared in the aforementioned line-up during the early afternoon of the same day. Having been identified by Officer Pilson, he was placed under arrest and released under a $25,000 bail bond pending an examining trial in the Louisville Police Court. On August 25, 1969, the date set for the examining trial, the Louisville Police Court pursuant to a motion by the Commonwealth ordered the proceeding "filed away to Fed. Auth." Federal officers then arrested Lynch and took him before a United States Commissioner, who released him under a $25,000 bail bond. Later on the federal charge was dropped, after which, on November 26, 1969, the Jefferson County Grand Jury returned the indictment in the instant case.

■ Relying on the principles announced in Jones v. Rayborn, Ky., 346 S. W.2d 743 (1969), Davis v. Harris, Ky., 355 S.W.2d 147 (1962), Thomas v. Schumaker, Ky., 360 S.W.2d 215 (1962), and Balsley v. Commonwealth, Ky., 428 S.W.2d 614 (1968), Lynch contends that the discontinuance of the examining trial proceeding in the Louisville Police Court in deference to the federal authorities effected a forfeiture of the state's right to prosecute him. However, we have held directly to the contrary. See Simpson v. Black, Ky., 471 S. W.2d 739 (decided October 8, 1971; Prather v. Commonwealth, Ky., 368 S.W. 2d 175 (1963); and Baker v. Commonwealth, Ky., 378 S.W.2d 616 (1964). These decisions hold that the release of a prisoner from pre-conviction custody followed by an arrest by authorities from another jurisdiction does not constitute arbitrary treatment. Lynch, of course, was not even in custody. Certainly he was in no way abused or prejudiced by the action of the Louisville Police Court.

■ Lynch's contention that the evidence was not sufficient to authorize submission of the motor vehicle charge (KRS 433.220) to the jury has more substance.

Ronald W. Craig, a garageman, testified that on August 22, 1969, "a yellow Cougar automobile" owned by one John L. Peters and in the witness' custody for purposes of repairs was "missing" without his knowl-

edge or consent or of the garage company. He was not asked, nor was there any other testimony in this respect, whether he ever saw the missing car again or had seen the yellow Cougar that had been found abandoned in the alley as mentioned by Officer Pilson. In short, there was no evidence to identify the automobile used in the bank robbery as the same one that was missing from Craig's garage. Surely it is beyond cavil that without this vital link the evidence was utterly insufficient to support Count 1 of the indictment. Cf. Moore v. Commonwealth, 229 Ky. 765, 17 S.W.2d 1021 (1929). Lynch's motion for an acquittal on the charge of operating a motor vehicle without consent of its owner should have been sustained.

Lynch contends also that the evidence was not sufficient to support his conviction on the armed robbery charge (KRS 433.-140). We are of the opinion that it was. Certainly the jury could reasonably believe Officer Pilson's positive identification of Lynch as the driver of the yellow Cougar automobile in the vicinity of the bank immediately following the robbery, and if in fact he was that man his attempt to conceal it by way of a denial buttressed by alibi testimony constitutes further evidence of guilt.

■ The previous felony convictions charged in Count 3 of the indictment were proved by introduction of the record book entries containing the judgments. None of the three judgments made mention of the date on which the crime was alleged to have been committed. There being no evidence that any of the convictions was for an offense committed after the first conviction, the instructions relating to enhanced punishment under the habitual criminal statute (KRS 431.190) should have been limited to one previous conviction rather than two. See Hardin v. Commonwealth, Ky., 428 S.W.2d 224 (1968). In the event this deficiency in the proof is corrected upon retrial of the case the instructions should be drawn in conformity

with the principles and directions set forth in Satterly v. Commonwealth, Ky., 437 S. W.2d 929, 931 (1968).

■ The contention that our procedure in allowing the jury to be informed of the previous felony convictions charged in the indictment unconstitutionally deprives the defendant of a fair trial has been several times rejected. Shull v. Commonwealth, Ky. (decided October 15, 1971); Hardin v. Commonwealth, Ky., 428 S.W.2d 224 (1968); Johnson v. Commonwealth, Ky., 445 S.W.2d 704, 707 (1969); Cole v. Commonwealth, Ky., 405 S.W.2d 753 (1966). A majority of the members of the court remain of unchanged persuasion in that respect. Technically, however, the jury nevertheless is free to find against the Commonwealth on its proof of prior convictions (for example, it may not be convinced that the defendant is one and the same person previously convicted), and Lynch's point is well taken that in admonishing the jury not to consider *the evidence* of previous convictions in determining his guilt or innocence of the primary charge the trial court should not assume *the convictions* as proven facts. Cf. Satterly v. Commonwealth, 437 S.W.2d 929, 930 (1968).

With regard to other questions raised by Lynch which require resolution for purposes of a new trial, our conclusions are as follows:

■ 1. Hearsay testimony admitted under the principles announced in Jett v. Commonwealth, Ky., 436 S.W.2d 788 (1969), must be strictly limited to matters that are relevant and for which specific foundation has been laid. By specific foundation we mean that the witness whose testimony is to be contradicted or enlarged by what he has said at another time must first be asked whether and to whom he made a specific statement, and the hearsay must be confined to that portion of the statement which he has in effect denied or professed not to remember.

*Jett* cannot be used as a passport for the admission of irrelevant information such as, in this instance, the fact that the defendant had breakfast with a colored prostitute.

[7] 2. RCr 7.26 does mean what it says. It is our procedural counterpart of the Jencks Act, 18 U.S.C. § 3500. If a Commonwealth witness has made a statement that has been reduced to writing, the defendant is entitled to have it produced in the manner provided by the Rule.

[8] 3. Interrogation of a witness about something he denies should not be extended unless the examining party is in a position to produce evidence to the contrary. Woodford v. Commonwealth, Ky., 376 S.W.2d 526 (1964).

[9] 4. Reference to Lynch in the Commonwealth's closing argument as a "professional," though possibly warranted by other information within the knowledge of the prosecuting authorities, was not supported by the evidence under consideration by the jury and was therefore improper. Whatever may be its infirmities, real or fancied, our system of justice seeks to convict solely on the basis of what the defendant has done, regardless of what he is.

The judgment is reversed for a new trial.

All concur.