Joseph Edward NIEMEYER and Leroy D. Tolbert, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Feb. 6, 1976.

Jack Emory Farley, Public Defender, Vincent D. Giovanni, Asst. Public Defender, Frankfort, for appellants.

Ed W. Hancock, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

The appellants, Niemeyer and Tolbert, were tried and convicted of rape and their sentences fixed at life imprisonment. The only serious question presented by their appeal concerns the admission of testimony elicited by the Commonwealth's Attorney during his questioning of the prosecutrix, the arresting officer and the appellants, and comments made during his closing argument.

Niemeyer and Tolbert were among a group of men who participated in the gang-style rape of Karen Zerhusen, the prosecutrix. At the time of the assault she and her fiancé were seated in a car parked in Kenton County. The men dragged her from the car, forced her into their automobile, and then drove to another location, where they beat and repeatedly raped her. Her fiancé also was beaten by the men. The appellants acknowledged their presence at the scene of the crime but denied any participation in the rape. They claimed to have been unable to prevent their associates from raping the victim because they were "too drunk or something." They were arrested shortly after the crime and were identified by both the prosecutrix and her fiancé as participants.

During the trial the Commonwealth's Attorney, over objection by defense counsel, questioned both the prosecutrix and the arresting officer about the appellants' failure to deny their guilt at the time of the identification procedure and at the time of the arrest:

DIRECT EXAMINATION OF PROSECUTRIX BY COMMONWEALTH

"DQ 205. In your presence, and in the presence of the police officers, and in the presence of the Defendants there, did either of the three Defendants, Niemeyer, Northcutt or Tolbert, deny that they had done it, after you accused them ----"

DEFENDANTS' OBJECTION: "We object."

RULING OF THE COURT: "Overruled."

"DQ 206. After you accused them of it, did they deny that they had done it?

"A. Well, when I was in the police cruiser and I identified each one, then that was it, ----

"DQ 207. (Interposing) I'm asking you, did they deny it?"

DEFENDANTS' INTERJECTION: "Just a minute."

"DQ 209. Did you hear any denial?"

DEFENDANTS' OBJECTION: "We object, Judge."

RULING OF THE COURT: "Overruled."

DIRECT EXAMINATION OF OFFICER GALL BY COMMONWEALTH

"DQ 55. Name them, again.

"A. Mister Tolbert, Mister Niemeyer, and Mister Northcutt.

"DQ 56. And did they make any denial of the identification by her?

"A. No, sir."

DEFENDANTS' OBJECTION: "We object."

RULING OF THE COURT: "Overruled."

DEFENDANTS' RESPONSE: "Judge, there hasn't been a proper foundation laid." ·

RULING OF THE COURT: "Overruled."

"A. No, sir.

"DQ 57. What happened then?

"A. They were placed under arrest at that time for rape."

The defense attorney then elicited on cross-examination from the arresting officer that actually Niemeyer and Tolbert had been unable to see or hear the prosecutrix during the identification process at the police station:

### CROSS–EXAMINATION OF OFFICER GALL BY DEFENSE COUNSEL

"CQ 7. And Mister O'Hara twice said that Karen Zerhusen identified these three boys who sit here at the table, and they didn't say anything, they didn't deny the charge; now I want you to tell this Jury were these three Defendants in her presence and knew what she was doing at the time she identified them when she first identified them?

"A. At the first time she identified them I don't believe they knew.

"CQ 8. They didn't know what she was doing with you, did they?

"A. No, sir, she was in the automobile.

"CQ 9. Now out at the Kenton County Police Station you had her looking through a window where she could see them, and they couldn't see her, didn't you?

"A. Yes, sir.

"CQ 10. So, they didn't know that she was identifying them at the police station?

"A. No, sir.

"CQ 11. Well, what do you mean by telling this Jury that they didn't deny the charge of rape when this woman identified them?

"A. They didn't deny it.

"CQ 12. Well, they didn't know they were being identified, did they?

"A. I don't believe that they did."

Niemeyer and Tolbert were both questioned by the Commonwealth's Attorney about the failure to offer any exculpatory information when they were identified by the prosecutrix and when they were arrested.

### CROSS–EXAMINATION OF TOLBERT BY COMMONWEALTH

"CQ 39. Who did have intercourse with Karen Zerhusen, Mister Tolbert?

"A. Meagher, Combs and Southworth. And Northcutt tried.

"CQ 40. · Now isn't that amazing."

DEFENDANTS' OBJECTION: "Now, Judge, we object to these comments."

RULING OF THE COURT: "I'll sustain. Sustained."

"CQ 41. I suppose you told the police that, that night."

DEFENDANTS' OBJECTION: "We object."

"A. No, sir."

RULING OF THE COURT: "Overruled."

"CQ 42. Why?

"A. Why should I?

"CQ 43. You were asked , weren't you?"

DEFENDANTS' OBJECTION: "We object."

RULING OF THE COURT: "Overruled."

"CQ 44. Weren't you?

"A. Yes.

"CQ 45. You didn't say anything, did you?

"A. No, sir."

"CQ 46. You didn't deny that you did it, did you?"

DEFENDANTS' OBJECTION: Now, Judge, I ____."

RULING OF THE COURT: "I'll sustain your objection. I'll sustain the objection. Continue with the trial."

### CROSS–EXAMINATION OF NIEMEYER BY COMMONWEALTH

"CQ 42. I suppose you told the police, when they came, this story about Mister Meagher and Mister Combs?

"A. No, sir.

"CQ 43. They asked you if you wanted to make a statement, didn't they?"

DEFENDANTS' OBJECTION: "We object."

RULING OF THE COURT: "Overruled."

The attorney for the Commonwealth made direct reference in his closing argument to the appellants' refusal or failure to deny guilt at the time the identifications were made and at the time of arrest:

"Today, July the 9th, 1970, roughly eight months after the commission of this offense, these Defendants come into court and say, 'I didn't do it. Meagher did it, Combs did it, and a dead man did it.' If you were accused of a crime that was going to deprive you of your liberty, for the rest of your life, without parole, without parole, because that's what we're to do, would you wait eight months, eight weeks, eight days, eight minutes, eight seconds to say to the police officer, 'Now, wait a minute. I was there, but I didn't do it. The two little guys, who escaped, and Southworth did it.' Would you do that? Well, if you didn't, you wouldn't be living a normal life. And had they done that, I can assure your that the Sergeant Galls and the Patrolmen Reimers, and the Patrolmen Hattons, and, yes, the Commonwealth's Attorney's office, for those of you who might know my reputation, would have left no stone unturned to bring to the Bar of Justice those culprits, provided the proof could be established. But no, even when they are accused on the scene, they don't utter a word."

DEFENDANTS' OBJECTION: "Judge, we object. We object to that statement, Judge."

INQUIRY BY THE COURT: " ____they don't utter a word?"

■ The admission of evidence pertaining to the appellants' silence in the face of accusations and the comments of the Commonwealth's Attorney constitute serious error. Appellants had been advised of their *Miranda* rights and were not required to make any statements concerning their guilt or innocence. The efforts of the prosecution to impeach each appellant by reference to his silence at the time of identification and at the time of arrest plainly violated his Fifth Amendment right to remain silent.

■ This court has said previously that the fact that an accused is under arrest and has the benefit of *Miranda* is sufficient to render inadmissible any accusatory statements in his presence even though he chose to remain silent. *Cessna v. Commonwealth,* Ky., 465 S.W.2d 283, 285 (1971). Although *Cessna* involved the apparent adoption of a statement by the defendant's wife, the principle of that case is applicable here. Evidence of the appellants' failure to make exculpatory statements during the identification procedure or at the time of arrest after *Miranda* warnings are issued cannot be admitted at trial.

■ The United States Supreme Court has recently addressed this problem in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). In the exercise of its supervisory powers over the *federal* courts that court observed that the potential for prejudice outweighs the probative value of evidence of silence by the defendant at the time of arrest. It said also that permitting the defendant to explain the reasons for his silence is not likely to overcome the strong negative inference the jury is likely to draw from the silence. Despite the fact that the errors committed in this case involve the appellants' constitutional rights, such errors are not necessarily prejudicial, thus requiring reversal. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *Watkins v. Commonwealth,* Ky., 465 S.W.2d 245 (1971). In determining whether an error is prejudicial an appellate court must consider whether upon the whole case there is a substantial possibility that the result would have been any

different. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969).

■ Two important circumstances in making such a determination are the weight of the evidence and the degree of punishment fixed by the verdict. The evidence presented in support of the appellants' guilt in the instant case was overwhelming. They admitted their presence at the crime scene in the company of two other men who did rape the prosecutrix. The victim identified them as two of the men who raped her. The only evidence offered in defense was their testimony relating to an alcohol or drug-induced inability to restrain their associates from carrying out the rape.

■ The penalty imposed by the jury was not the minimum sentence, but "split the middle" between life without parole and ten to twenty years in the penitentiary. KRS 435.090. It is our conclusion beyond a reasonable doubt that the errors and irregularities were not prejudicial.

Some of the constructions placed by the United States Supreme Court in recent years upon various protections guaranteed to individuals by the Constitution have brought dismay and discouragement to those charged with enforcing the laws against crime. Nevertheless, that court is the final authority in the field of federal constitutional jurisprudence, and what it has said on the subject of the right of silence not only is and was the law of this case, but well before the trial of this case had been expressed in no uncertain terms by its celebrated (and as often execrated) opinion in *Miranda v. Arizona*, 384 U.S. 436, 468, fn. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), as follows:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

■ One of the finest offices the public can give to a member of the legal profession in this state is that of Commonwealth's Attorney. Its very status becomes a mantle of power and respect to the wearer. Though few are apt to wear it lightly, some forget, or apparently never learn, to wear it humbly. No one except for the judge himself is under a stricter obligation to see that every defendant receives a fair trial, a trial in accordance with the law, which means the law as laid down by the duly constituted authorities, and not as the prosecuting attorney may think it ought to be.

We consider this to be an inexcusable example of abuse by a public prosecutor. Officially, publicly, and as a word of caution to other similar officers, we disapprove of and condemn it.

The judgment is affirmed.

All concur except for LUKOWSKY, J., who did not sit.