Leroy KINSER, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Ronald JOHNSON, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Dean VINCENT, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Nos. 85–SC–1085–MR, 85–SC–1092–MR
and 85–SC–1093–MR.

Supreme Court of Kentucky.

Oct. 15, 1987.

Rehearing Denied Jan. 21, 1988.

---

Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant LeRoy Kinser.

Linda K. West, Asst. Public Advocate, Frankfort, for appellant Ronald Johnson.

Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellant Dean Vincent.

David Armstrong, Atty. Gen., Elizabeth Marshall, Asst. Atty. Gen., Frankfort, for appellee Com.

WINTERSHEIMER, Justice.

. This appeal is from a judgment based on a jury verdict which convicted Kinser, Johnson and Vincent of first-degree burglary, first-degree robbery, and wanton murder. They were sentenced to terms of twenty years, twenty years, and life.

Various issues were raised by the three appellants with the most consistent complaint being an objection to the bifurcated procedure used by the trial judge. Kinser had given a statement to police which directly implicated Johnson and Vincent. Consequently the trial judge was presented with the problem of the admissibility of this statement against Johnson and Vincent because Kinser was not expected to testify. Rather than granting separate trials, the trial judge bifurcated the trial so that all evidence for the prosecution except for the statement of Kinser was presented to the jury and then all three defenses were submitted. The jury was then instructed as to Johnson and Vincent and a verdict of guilty was returned. The jury then heard evidence as to the penalty phase for the murder convictions of Johnson and Vincent and those penalties were set. Thereafter, the jury heard the evidence regarding Kinser's statement and retired to deliberate his guilt. Upon finding him guilty, his penalty phase was completed and he was sentenced.

Kinser argues that his confession should have been suppressed due to conflicting interests of attorney Logsdon; that he was prejudiced by the bifurcated trial procedure; that the trial judge violated his guarantee against double jeopardy; that he was prejudiced by the comments of the trial judge and that the testimony of Detective Gaddie prejudiced him.

Johnson claims that the statement by Kinser was not properly admitted; that a proper foundation was not laid for the impeachment of Eva Kinser; that he was prejudiced by the bifurcated trial procedure; and that the trial court erred in refusing to grant separate trials.

Vincent maintains that the out-of-court statements made by Kinser and Johnson deprived him of his right to confrontation and cross-examination; that a proper foundation was not laid for the impeachment of Eva Kinser; that he was prejudiced by the bifurcated trial; that he was prejudiced by the testimony of Detective Gaddie; that the closing argument was improper; that the comments of the trial judge were unfair and that the trial judge violated his guarantee against double jeopardy.

During the course of burglarizing the residence of the victim, the intruders severely beat and gagged him. He died either as a result of the attack upon him or the tightness of the gag which rendered him unable to breathe. After hearing the circumstantial evidence of guilt, the jury convicted all three defendants. On appeal they present a united attack on the bifurcated proceeding and each presents additional individual grounds challenging the verdict.

This Court affirms the judgment of the circuit court because the bifurcated trial did not cause any prejudice or violate any substantial rights of the defendants. The procedure was entirely within the discretion of the trial judge pursuant to RCr 9.42 and rather than causing prejudice to Vincent and Johnson, the trial judge actually protected their rights.

I

It was not reversible error for the trial judge to refuse to suppress the pretrial taped confession on the grounds of conflict of interest on the part of counsel.

Kinser argues that his original counsel also represented a potential key prosecution witness. The defense lawyer did represent the daughter of the witness at the time and he had an involvement with the witness by virtue of accompanying her when she turned over to police a roll of dimes given to her by Kinser. Shortly after the confession the lawyer was replaced by other counsel for Kinser.

■ A careful review of the record indicates that the trial judge did not commit reversible error in determining that the confession by Kinser was entirely voluntary. The evidence indicates that it was his

desire to make such a statement. The statement, while implicating himself in the overall crime, served to portray him as a mere bystander to the attacks on the victim. The fact that he was represented by counsel at the time he waived his rights and made a voluntary statement does not make the statement any less voluntary.

The original counsel testified that he talked with Kinser a sufficiently long time to be satisfied that the defendant sincerely desired to make a statement. Kinser's rights were fully discussed and thoroughly explained and he seemed to be under no duress. There was no indication that he was offered any inducement or promise by the prosecution or any police official. Counsel recalled that Kinser was read his rights, understood them and voluntarily waived them.

The evidence indicated that no legal relationship ever existed concurrently between defense counsel and the witness or the lawyer and the defendant. There was no actual conflict of interest and no adverse performance by counsel as a result of any conflict. *See United States v. Knight,* 680 F.2d 470 (6th Cir.1982) cert. den. 459 U.S. 1102, 103 S.Ct. 723, 74 L.Ed.2d 950 (1983).

■ Kinser was not prejudiced by the bifurcated trial procedure. He had completed his case when the jury first began any deliberations. No further defense was made by Kinser after the jury heard his confession. The fact that the jury found the two co-defendants guilty prior to hearing the confession no more prejudiced the jury as to Kinser than would have occurred had the jury considered the guilt of all three at the same time. Kinser had no further case to present at the time the jury deliberated on the guilt of the other co-defendants.

The only effect of the bifurcation was to avoid the prejudice to the co-defendants which could have emanated from the Kinser confession. As to him, the additional element of his confession may have hurt his case, but the same would have been true at an entirely separate trial. *United States v. Stratton,* 649 F.2d 1066 (5th Cir. 1981) is not applicable because Kinser had completed his case before the jury first began any deliberations.

■ The argument that the trial judge violated his guarantee against double jeopardy is without merit. *Polk v. Commonwealth,* Ky., 679 S.W.2d 231 (1984).

Kinser was not prejudiced nor denied due process by the comments of the trial judge. A reading of the entire record indicates the impartiality with which the trial was conducted. The two comments by the trial judge are insignificant and do not amount to reversible error.

The testimony of Detective Gaddie did not prejudice Kinser or deny him due process of law. Any prejudice which could have possibly resulted was cured by the strong admonitions from the trial judge.

## II

■ The out-of-court statement by Kinser that he watched Johnson and Vincent beat and rob the victim was properly admitted as a prior inconsistent statement and limited in its application against Kinser only.

■ Johnson argues that the trial judge committed error by admitting the out-of-court statement of Kinser made to his sister. During her examination, she testified that she had been interviewed by Detective Gaddie but denied making any statement relative to the involvement in this crime by her brother. After an appropriate foundation was made, the prosecution produced evidence from the detective to the effect that Kinser had told his sister that he was with Johnson and Vincent during the crime but that he stood in the doorway while they went inside and did whatever was done. Johnson argues that because that statement incriminated him and because Kinser did not testify, his rights were violated pursuant to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton, supra,* does not apply because the prosecution offered to sanitize the statement by excising the names of Vincent and Johnson, but the defense objected. Thus, the defendants themselves

brought about the harm denounced in *Bruton*. They cannot complain now.

■ A proper foundation pursuant to Civil Rule 43.08 was laid for the impeachment of Eva Kinser. The witness was expressly asked about her conversations with the detective and she admitted the conversation. She was then specifically asked about the statement in question, but denied making any such statement. Johnson argues that in order to have a sufficient foundation, she should have been informed of the date and time of the alleged statement. Had Eva denied the conversation with the detective such a foundation would have been necessary. However, she recalled and admitted the conversation but simply denied making any statement relating to the possible involvement of her brother in the crime. The foundation was adequate. *Lynch v. Commonwealth*, Ky., 472 S.W.2d 263 (1971).

■ Johnson was not prejudiced by the bifurcated trial procedure. It was not an abuse of discretion for the trial judge to deny all of the motions by the three defendants for separate trials even though Kinser had given a statement to police which implicated Johnson and Vincent. This statement was inadmissible as to Johnson and Vincent because Kinser would not be testifying at trial. *Bruton.*

Due to the nature and complexity of this trial, rather than grant separate trials, the trial judge properly provided that the case as to Johnson and Vincent would go to the jury only after all evidence was presented except for the statement of Kinser, and after all defense evidence from the three defendants was presented. We do not believe this procedure violated Johnson's rights. The trial judge actually sought to protect his rights and not to prejudice him. There is no basis for the contention by Johnson that he was prejudiced. As far as the Kinser statement is concerned and with regard solely to the issue of the bifurcated trial, the jury heard nothing as to Johnson and Vincent that it would not have heard at a separate trial. The simple fact that the jury was instructed to consider the guilt of Vincent and Johnson "for procedural reasons" before deciding the guilt of Kinser in no way prejudiced the verdicts as to Johnson and Vincent.

The trial judge has broad discretion in designating the order of trial so as to protect the various rights of competing interests. The trial judge did not abuse his discretion as provided by RCr 9.42.

■ Wide discretion is vested in the trial judge in the conduct of a trial and such discretion should not be disturbed unless clearly abused. *Veach v. Commonwealth*, Ky., 572 S.W.2d 417 (1978).

The argument by Johnson that the trial judge erred in refusing to separate his trial from that of Kinser, is unconvincing. Johnson was in no way prejudiced by Kinser's statement due to the bifurcation.

### III

■ The out-of-court statements made by Kinser and Johnson did not deprive Vincent of his rights to confrontation and cross-examination. The argument by Vincent is the same as Johnson's with respect to the out-of-court statements of Kinser, and we need not further address that issue. As to the out-of-court statement made by Johnson, we find no clear reference to Vincent in any of those statements. Where appropriate, the trial judge admonished the jury not to consider the statements as evidence against the co-defendants.

■ The testimony by Detective Gaddie did not prejudice Vincent and was not grounds for a mistrial. The statements made by the detective did not give opinions or conclusions on ultimate issues so as to invade the province of the jury. They were merely an attempt in a long, narrative form, to describe for the jury the police officer's evaluation of evidence which led to the progressive steps in the investigation. Any possible prejudice was cured by the admonitions by the trial judge.

With respect to the first statement, the trial judge overruled an objection by Vincent, but admonished the jury that this was just an opinion or conclusion of the detective and that the jury would be the sole

judge of whether any of the evidence connected the defendants to the crime. While the statement was unnecessary, numerous items of evidence found at the scene were introduced at the trial by various witnesses and this statement by the detective added nothing to the overall case. Any error was nonprejudicial. RCr 9.24; *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969).

■ The second statement of the detective complained of by Vincent came at a time when the detective was explaining the progress of the investigation. In answering a question as to what next was done in the investigation, the policeman stated:

> At this point in time, the three defendants were suspects in the case. I knew enough about the case to think that they had possibly committed this murder.

Although this statement was improper, the trial judge sustained the objection and strongly admonished the jury not to consider the error. We believe the admonition cured the problem.

■ Vincent next argues that two statements by the prosecutor were improper and prejudicial.

In his opening statement, the prosecutor informed the jury that evidence would be submitted that Vincent had made the statement in reference to the victim that "we will just slit his throat and get it over with." During the prosecution case, no witness testified that Vincent had said this. However, after objection, the prosecutor offered to show the trial court the investigative report of the detective which indicated that the statement was made by Vincent in the presence of a Lesa Wood. Wood testified at trial, but apparently narrowed her testimony in such a way as to not admit all of the statements that she had made to the police. We believe the prosecutor acted in good faith and there is no other place in the record which contains any reference to such a statement. In addition, the trial judge admonished the jury not to consider the opening statement of the prosecutor as evidence.

Considering that a ten-day trial followed the opening statement and in light of the overwhelming evidence of guilt heard by the jury, we cannot say that this single statement had any bearing on the outcome of the trial. The error was harmless beyond any reasonable doubt. *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976).

■ Next Vincent argues that a second statement made by the prosecution was prejudicial to him. During the cross-examination of Wood, defense counsel was unhappy with the progress being made. He requested the trial judge to allow him to play a tape of a statement she had previously made. During the discussion of this point, the prosecutor said that if we're going to play tapes of witnesses that he would like to "get in the act." While saying this, the prosecutor apparently held up his briefcase. Although we find both the comment and the act of raising the briefcase totally unnecessary, any effect on the jury is speculative and harmless. *Niemeyer, supra.* Without more, the jury had no idea of what tapes of what witnesses were made by whom. Defense counsel sought to place into evidence inadmissible tape recordings and the prosecutor simply responded in kind. No conclusion of prejudice for either side can be supported by mere speculation.

■ Vincent also objects to improper comments attributed to the trial judge. Again, during the cross-examination of Wood, it became apparent that she had made a contradictory statement to defense counsel from the one she had given to the police. After she testified in court that the statement made to the defense was a lie, the defense counsel attempted to prolong cross-examination with respect to that statement. In order to cut short the extended nature of this examination, the trial judge commented that he did not see the relevance and that she had admitted the entire statement was probably not true. After objection, the trial judge said, "I just said that the witness had said that the statement, most of it wasn't true...." According to the record, the trial judge simply

repeated what the witness had specifically stated, that is that the statement given to defense counsel was untrue. The trial judge was within his discretion to stop a prolonged examination as to the individual details of that statement. We cannot say that the trial judge abused his discretion in attempting to control the progress of the trial.

Throughout the trial, there were frequent objections and discussions about various out-of-court statements made by the three defendants to different individuals. While the defendants have attempted to characterize many of these statements as confessions so as to involve *Bruton*, we are not convinced that that case applies. Our review of the record indicates that all of the out-of-court statements to which Vincent objects were properly admitted by the trial judge. There were no reversible errors in the rulings by the trial judge.

A proper foundation pursuant to CR 43.-08 was laid for the impeachment of Eva Kinser. The prior inconsistent statement about which Detective Gaddie testified was properly admitted and applied to the Vincent trial pursuant to *Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969). *See also Lynch, supra.*

Vincent was not prejudiced by the bifurcated trial. He now makes a general attack on the procedure used but offers no specific indication that he was in any way prejudiced by the procedure. His counsel agreed with the procedure at the outset, stating that he could not see any prejudice. The bifurcated proceeding used by the trial judge is a viable alternative to severance in cases with confessing and nonconfessing defendants which satisfies the mandates of *Bruton, supra* and all other due process requirements. He was not prejudiced.

Finally, Vincent argues that his constitutional guarantee against double jeopardy was violated when he was convicted of first-degree burglary, first-degree robbery and murder. Vincent concedes that this issue is not preserved for review by objection, but of course a double jeopardy violation can be reviewed despite the lack of preservation.

However, Vincent's contention lacks all merit. He submits that the three crimes for which he was convicted were the "same" for double jeopardy purposes. Contrary to that assertion, first-degree burglary, first-degree robbery and murder are three separate offenses. Vincent engages in a hypertechnical and rhetorical discussion in order to create an issue and in doing so totally ignores the obvious statutory fact that murder is not an included incident to the commission of either burglary or robbery. He bases his argument on the wording of the instructions to the jury. However, according to a clear reading of the record, it was Vincent's counsel who submitted the instruction given by the court. He cannot now be heard to complain.

The bifurcated proceeding used by the trial court did not prejudice or violate any substantial rights of any of the defendants. It was within the special reasons and discretion of the trial judge as contemplated by RCr 9.42 and did not constitute the occasion for any particular reversible error.

The judgment of conviction is affirmed as to all defendants.

LAMBERT, LEIBSON and STEPHENSON, JJ., concur.

VANCE, J., concurs in result.

GANT, J., concurs in Kinser and dissents in Johnson and Vincent.

STEPHENS, C.J., dissents and files a separate dissenting opinion.

STEPHENS, Chief Justice, dissenting.

The majority maintains that the out-of-court statement by Leroy Kinser that he watched Johnson and Vincent beat and rob the victim was properly admitted as a prior inconsistent statement to impeach Eva Kinser. I disagree.

Detective Gaddie testified that Eva Kinser told him that Leroy Kinser told her that he stood in the doorway of the victim's home while he watched his co-defendants, Dean Vincent and Ronnie Johnson, "do the robbing and whatever else was done

there." This is double hearsay. Any statement made outside of the courtroom witness stand, offered for the truth of the matter asserted therein, constitutes hearsay. To be admissible, it must fall into a recognized hearsay exception.

Leroy Kinser's statement, because it is double hearsay, requires two exceptions. His statement to Eva Kinser could properly be admitted as an admission, and her statement could fit into the exception for impeachment by prior inconsistent statements. *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). However, these exceptions would only apply to Leroy Kinser. To admit his statement into evidence during the trial of his co-defendants Vincent and Johnson would be unacceptably prejudicial to them. The trial court's admonition was not enough to cure the inevitable conclusions to be drawn from the statement by the jury. As the United States Supreme Court held in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968),

> [a] defendant may be prejudiced by the admission in evidence against a co-defendant of a statement ... made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice.

*Id.* at 132, 88 S.Ct. at 1625.

Thus, Leroy Kinser's out-of-court statement should never have been allowed to be heard by the same jury that determined the fate of Johnson and Vincent. Such an admission into evidence "violated [their] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126, 88 S.Ct. at 1622.

For the foregoing reasons, I respectfully dissent.