Dean VINCENT, Petitioner–Appellant,

v.

Al PARKE, Respondent–Appellee.

No. 90–5890.

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1991.

Decided Aug. 23, 1991.

Rodney McDaniel (argued and briefed), Dept. of Public Advocacy, Frankfort, Ky., for petitioner-appellant.

John Gillig, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen. of Kentucky, Frankfort, Ky., for respondent-appellee.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Dean Vincent appeals the district court's order denying his petition for a writ of habeas corpus. In his habeas petition, Vincent raised six different grounds for the issuance of the writ: (1) denial of his sixth amendment right to confront adverse witnesses; (2) denial of his right to an impartial jury; (3) denial of due process by state police detective's opinion testimony as to Vincent's guilt; (4) denial of due process as a result of prosecutorial misconduct; (5) denial of fair trial by improper comments made by the trial judge; and (6) his conviction violated the fifth amendment's protection against double jeopardy. With respect to Vincent's first argument that his sixth amendment right to confront opposing witnesses was violated, the district court found that there was in fact a violation of Vincent's right to confront opposing witnesses as established by *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but concluded the violation was harmless. The district court rejected Vincent's remaining grounds for habeas relief finding them to be meritless. For the foregoing reasons, we reverse.

Dean Vincent and two co-defendants, Leroy Kinser and Ronald Johnson, were indicted by the Butler Circuit Court in August 12, 1983, for first degree burglary, first degree robbery, capital murder, and criminal conspiracy relating to the burglary, robbery and death of Butler County, Kentucky resident, Harold Hayes. During the police investigation, Kinser had con-

fessed to the police and implicated Vincent and Johnson. On November 5, 1984, the state court held a suppression hearing regarding Kinser's motion to suppress his taped confession. The court denied Kinser's motion to suppress the confession.

In order to prevent Kinser's confession from unduly prejudicing his co-defendants, the prosecution moved for a bifurcated trial. The terms of the bifurcated trial procedure provided that: (1) the prosecution would introduce its case-in-chief, excluding Kinser's confession; (2) the defendants would then present their defenses with the exception of any rebuttal evidence Kinser wished to offer regarding his confession; (3) the jury would thereafter deliberate on the guilt, or innocence, of defendants Vincent and Johnson; (4) if either Vincent or Johnson were found guilty, the jury would then hear evidence concerning Vincent's and/or Johnson's sentence; (5) the prosecution would then introduce Kinser's confession; (6) Kinser would then introduce any rebuttal evidence regarding his confession; (7) the jury would then determine Kinser's guilt or innocence; and (8) if Kinser was found guilty, the jury would then determine Kinser's sentence. All defendants objected to procedure on the grounds that it was not provided for by the Kentucky Rules of Criminal Procedure. The court granted the motion for bifurcation over the defendants' objections.

The defendants' trial began on August 12, 1985, and concluded on August 23, 1985. Following the close of the evidence, the prosecution moved to dismiss the charge of conspiracy to commit robbery. Thereafter, utilizing the bifurcation procedure, the jury found all three defendants guilty of first degree robbery, first degree burglary, and murder. Defendants were sentenced to twenty years imprisonment on both the robbery and burglary convictions and life imprisonment for the murder convictions.

Vincent's conviction, along with the other two co-defendants, was affirmed by the Kentucky Supreme Court on direct appeal. *Kinser v. Commonwealth*, 741 S.W.2d 648 (Ky.1987). Thereafter, Vincent filed a peti-

tion for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Vincent's habeas petition was initially referred to a United States Magistrate who recommended that the writ be issued. The district court subsequently rejected the magistrate's recommendation and denied the petition. This appeal ensued.

Initially, Vincent argues that his sixth amendment right of confrontation was violated when the prosecution introduced testimony concerning two out-of-court statements made by co-defendant Leroy Kinser. The two statements allegedly made by Kinser that Vincent objects to were offered by Louise Wilson and Detective Gaddie. Wilson testified that she overheard Kinser say to Vincent and Johnson, "Well, why don't you kill them god-damn dogs, too." Detective Gaddie, referring to his earlier conversation with Kinser's sister, Eva Kinser, regarding her brother's participation in the charged crimes, confirmed that Eva Kinser had informed him that "Leroy [Kinser] told [her] that he was with Ronnie and Dean during the crime but he stood in the doorway and was too shocked to move because of what Ronnie [Johnson] and Dean [Vincent] were doing to Hayes[.]" After the admission of this statement, the trial court admonished the jury not to consider the statement as evidence against defendants Vincent and Johnson.

When the Kentucky Supreme Court reviewed Detective Gaddie's testimony regarding Kinser's statement to his sister on direct appeal, it found that the statement did not violate Vincent's sixth amendment rights because the prosecution offered to redact the names of Johnson and Vincent and the defendants objected to redaction of the name of the codefendants and therefore brought about the harm for which they complain. *Kinser*, 741 S.W.2d at 651–52. The district court determined and we agree that the record does not support this conclusion. Instead, the record reflects that Vincent did object to the introduction of the statement in any form and when that objection was overruled, he objected to the introduction of the statement without excising his name:

THE COURT: Alright, I am still of the opinion that Bruton and these other cases apply only to confessions or statements given to law enforcement officers in the course of their investigations, and I will permit it with admonition that I have stated.

DEFENSE COUNSEL: It will not be excised, your Honor?

THE COURT: No.

PROSECUTION: Thank you, your Honor.

DEFENSE COUNSEL: Exception.

Vincent argues that the introduction of these out-of-court statements made by Kinser violated his rights under the confrontation clause of the sixth amendment pursuant to the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, the Court held, *inter alia*, that a defendant is deprived of his rights under the confrontation clause when a co-defendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. The Court rested its decision on the fact that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.... Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 135–136, 88 S.Ct. at 1627–1628 (citations omitted). The *Bruton* rule, as it has come to be called, is applicable to the state as well as the federal courts. *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

■ With respect to the statement testified to by Louise Wilson, we reject Vincent's argument that its introduction violated the dictates of *Bruton* for a number of reasons. As an initial matter, it is not entirely clear whether the *Bruton* analysis is even applicable to this statement. One critical element for the Court's decision in *Bruton* was that the credibility of the co-defendant's *confession* was "inevitably suspect" given the speaker's clear "motivation to shift blame onto others," and that such unreliability is "intolerably compounded when the alleged accomplice ... does not testify and cannot be tested by cross-examination." *Bruton*, 391 U.S. at 136, 88 S.Ct. at 1628. *See also United States v. Kendricks*, 623 F.2d 1165, 1167 (6th Cir. 1980) (per curiam). The statement by Kinser, "Well, why don't you kill them goddamn dogs, too," is simply not an admission of guilt by Kinser nor is it an attempt to shift blame onto others.

Furthermore, even if the *Bruton* analysis is appropriate, this statement does not expressly implicate Vincent in the charged crime and thus is not "powerfully incriminating." *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987) (quoting *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1627). As *Bruton* and subsequent cases make clear, *e.g.*, *Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707; *Cruz v. New York*, 481 U.S. 186, 193, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162 (1987), the extrajudicial statement must clearly implicate the defendant in order for there to be a violation of that defendant's sixth amendment right to confront adverse witnesses. *See also Hodges v. Rose*, 570 F.2d 643, 646 (6th Cir.), *cert. denied*, 436 U.S. 909, 98 S.Ct. 2244, 56 L.Ed.2d 408 (1978). This statement, standing alone, does not expressly implicate Vincent in the crime. Indeed, the statement does not refer specifically to Vincent nor does it make any reference to the Hayes' murder. At most, this statement, coupled with the rest of the evidence introduced at trial against the defendants, raises the inference that sometime prior to its utterance either defendant Vincent or Johnson had been involved in a "killing." This is not enough to constitute a violation of *Bruton*. *Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707.

■ The situation is quite different with respect to Kinser's statement to his sister as recounted by Detective Gaddie. That

statement was, for all intents and purposes, a confession of guilt by Kinser in which he clearly implicated Vincent in the crime. In fact, Kinser's statement to his sister is exactly the type of confession alluded to in *Bruton*, one in which the speaker attempts to shift the blame onto others. Therefore, the admission of this statement violated the *Bruton* rule as to Vincent. Having concluded that the introduction of Kinser's statement to his sister violated the strictures of *Bruton*, we now face the question of whether the *Bruton* error was harmless beyond a reasonable doubt. *See Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) ("We reject the notion that a *Bruton* error can never be harmless."). The district court, after summarizing the evidence against Vincent, concluded that the introduction of Kinser's statement was harmless beyond a reasonable doubt. We disagree.

We make the determination as to whether the admission of Kinser's statement was harmless error "on the basis of 'our own reading of the record and on what seems to us to have been the probable impact ... on the minds of the average jury.'" *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972) (quoting *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). "'[B]efore a federal constitutional error can be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *Arizona v. Fulminante*, 499 U.S. ——, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)); *see also United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir.1990). Error is not harmless where "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction," or where the jury would "have found the State's case significantly less persuasive." *Schneble*, 405 U.S. at 432, 92 S.Ct. at 1060; *see also Chapman*, 386 U.S. at 24, 87 S.Ct. at 828 (requirement that harmlessness of federal constitutional error be clear beyond a reasonable doubt embodies standard requiring

reversal if " 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction' ") (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963)). The improper admission of a co-defendant's uncross-examined statement is likely to be harmless where the statement is duplicative of other testimony in the case. *Schneble*, 405 U.S. at 431, 92 S.Ct. at 1059.

Admittedly, the independent evidence introduced at trial against Vincent was substantial. However, most of this evidence was circumstantial in nature, such as testimony establishing that Vincent was seen with the co-defendants in his 1977 maroon Dodge earlier on the day of the murder; that Vincent and the co-defendants got drunk at Louise Wilson's house and talked of robbing Hayes; that Vincent on an earlier occasion talked of robbing Hayes in the presence of Sowders; that two days before the murder Vincent stated he would commit the robbery immediately and in fact drove with Sowders to the grocery store but did not commit the robbery; that around 11:30 on the night of the murder Vincent and his co-defendants paid off their debts to a bootlegger with a roll of dimes but earlier in the day had to pawn items in order to purchase liquor; Vincent and the co-defendants arrived at Louise Wilson's house on the night of the murder around 11:00 pm or 11:30 pm, hurriedly parked Vincent's car in the rear of the house, and asked for a bag in which to put money and change; and that the victim died around 11:00 pm. Perhaps the strongest evidence introduced against Vincent, excluding Kinser's statement to his sister, was the fact that fibers found on tape which was used to tape the victim's feet, hands and mouth matched fibers found in Vincent's maroon Dodge.

In light of the prosecution's lack of evidence *directly* linking Vincent to the crimes, Kinser's statement to his sister, which placed all three defendants at the crime scene with Vincent and Johnson delivering the fatal blows to Hayes, takes on a particular significance. Based upon our

review of the record, we are unable to conclude beyond a reasonable doubt that the probable impact of Kinser's statement to his sister was harmless. Kinser's statement was not merely cumulative, but rather a critical piece of the prosecution's case against Vincent. Indeed, it was the only piece of evidence introduced which placed Vincent at Hayes' store on the night of the murder. Although we recognize that there was a substantial amount of circumstantial evidence introduced at trial against Vincent, we cannot say that the introduction of Kinser's statement did not render the prosecution's case significantly more persuasive. *Schneble*, 405 U.S. at 432, 92 S.Ct. at 1060.

Accordingly, Vincent's petition for habeas corpus must be granted, and we reverse and remand this case to the district court with instructions to take such action in the event that the commonwealth does not grant Vincent a new trial within a reasonable time. Having found that Vincent is entitled to habeas relief on the ground that his sixth amendment right to confrontation was abridged, we decline to address Vincent's remaining arguments, as doing so would be duplicative.

CONTIE, Senior Circuit Judge, dissenting.

For the following reasons, I respectfully dissent.

## I.

Harold Hayes, a Butler County (Kentucky) grocery store owner, was killed in his home during the evening of June 15, 1983. Hayes' badly beaten body was found under a quilt. Hayes' mouth, eyes, hands and legs were bound with gray duct tape. Hayes' head was severely lacerated and bruised; his nose was broken. Kentucky State Police Detective Joe Gaddie determined that Hayes' door had been forced open (the lock area was splintered), the house had been ransacked, and the telephone cord had been cut.

On August 12, 1983, the Butler Circuit Court returned a four-count indictment charging petitioner-appellant Dean Vincent and his co-defendants (Leroy Kinser and Ronald Johnson) with first degree burglary, first degree robbery, capital murder, and criminal conspiracy relating to the burglary, robbery and death of Harold Hayes on June 15, 1983. On November 5, 1984, the state court held a suppression hearing regarding Leroy Kinser's motion to suppress his August 29, 1983 taped confession given to Detective Gaddie. The court denied Kinser's motion to suppress the confession. On April 12, 1985, all three defendants joined in a motion for separate trials (primarily due to the limited admissibility of defendant Kinser's confession). The trial court judge denied the defendants' motion. On August 7, 1985, the prosecution successfully moved (over the defendants' objections) for a bifurcated trial to address the dilemma of using defendant Kinser's confession without prejudicing his co-defendants.

The defendants' jury trial began on August 12, 1985, and concluded on August 23, 1985. Evidence presented at trial conclusively established that the tape used to restrain Hayes had come from a roll of duct tape that Walter Johnson (defendant Ronald Johnson's father) had cut in half and given to the petitioner-appellant, Dean Vincent, on the day of the murder. In fact, laboratory analysis revealed that fiber samples adhering to the edges of the duct tape found on Hayes matched fiber samples taken from Vincent's automobile. Moreover, the prosecution presented numerous witnesses to solidify its case against the defendants: Judy Seabolt Ray testified regarding the defendants' sudden acquisition of money, and their peculiar behavior and comments, on the night of Hayes' murder; Danny Cornwell testified that the defendants had earlier asked him to participate in the Hayes' robbery; Louise Wilson testified that the defendants had told her to tell the police that they were with her the night of the murder from 9:00 p.m., though they did not arrive until well past 11:00 p.m. (she also overheard defendant Kinser say, "Well, why don't you kill them god-damn dogs too"); Lesa Hodge Wood (though her statements varied) testified that she heard

the defendants planning the robbery, held money for the defendants after the robbery, and washed defendant Johnson's bloodied pants following the robbery; Johnny Sowders testified that he had informed the defendants that Hayes could be robbed at night because he lived alone (he further testified that he had accompanied Vincent and Johnson to Hayes' grocery store two days before Hayes' murder because appellant wanted to "do it now"); and Detective Gaddie testified that Leroy Kinser admitted standing at Hayes' doorway watching as Johnson and Vincent beat and robbed Hayes. None of the defendants testified.

After the trial court dismissed the criminal conspiracy charge against the defendants at the close of the evidence, the jury found defendants Johnson and Vincent guilty of first degree robbery (twenty years imprisonment), first degree burglary (twenty years imprisonment), and murder (life imprisonment). The prosecution then presented defendant Kinser's taped confession through the testimony of Detective Gaddie who read the transcribed statement. Kinser offered no evidence to rebut his confession. The jury found Kinser guilty of first degree robbery (twenty years imprisonment), first degree burglary (twenty years imprisonment), and murder (life imprisonment).

Vincent's convictions were subsequently upheld by the Kentucky Supreme Court on direct appeal. *Kinser v. Commonwealth,* 741 S.W.2d 648 (Ky.1987). Vincent thereafter filed his writ of habeas corpus petition in the United States District Court for the Western District of Kentucky. Though a United States Magistrate recommended that the writ be issued, the district court judge rejected the magistrate's recommendations and denied the petition on June 13, 1990.

Vincent thereafter filed a timely notice of appeal.

## II.

### A.

Initially, Vincent argues that "the prosecution was allowed to refer to, and introduce testimony concerning, out-of-court statements made by Kinser and Johnson. The out-of-court statements of the nontestifying codefendant Kinser implicated petitioner-appellant in the charged crimes and were highly prejudicial to petitioner-appellant." Appellant's Brief at 14–15. The two out-of-court statements allegedly made by Vincent's co-defendant, Leroy Kinser, that Vincent complains about were offered by Louise Wilson (overheard Kinser say to his two co-defendants, "Well, why don't you kill them god-damn dogs too") and Detective Gaddie (referring to his earlier discussion with Eva Kinser regarding Leroy Kinser's participation in the Hayes' crimes, the detective testified that "she stated that several days later she asked him again, and he told her that he was with the other two defendants, Dean Vincent and Ronnie Johnson, when they were down there at Harold Hayes' house to go down to rob him, but he stood in the doorway at this time, while they went in to do the robbing and whatever else was done there.").

After noting that "[b]oth of the out-of-court statements made by Kinser were inculpatory as to petitioner-appellant," Appellant's Brief at 19, Vincent argues that the introduction of Kinser's statements "violated petitioner-appellant's rights under the Confrontation Clause of the Sixth Amendment," *id.,* pursuant to the Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In response, the appellee maintains that "[w]hile the defendants have attempted to characterize many of these out-of-court statements as confessions to which *Bruton v. United States* would apply, it is clear that *Bruton* does not apply," Appellee's Brief at 14, because Kinser's statements were merely admissions against self-interest, *see* Fed.R.Evid. 804(b)(3), not confessions as required by *Bruton.* *See* Appellee's Brief at 14 ("a confession [is] an acknowledgement of criminal culpability by the accused; an admission against interest [is] a statement which does not directly involve an acknowledgement of guilt or criminal intent").

In *Bruton v. United States*, the Supreme Court held:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.... The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

We, of course, acknowledge the impossibility of determining whether in fact the jury did or did not ignore Evans' statement inculpating petitioner in determining petitioner's guilt.... Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all.

*Bruton v. United States*, 391 U.S. at 135–37, 88 S.Ct. at 1627–29 (citations omitted). More recently, the Supreme Court summarized its *Bruton* holding:

In *Bruton v. United States*, we held that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.

. . . .

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." We have held that that guarantee, extended against the States by the Fourteenth Amendment, includes the right to cross-examine witnesses.... Where two or more defendants are tried jointly, therefore, the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination.

*Cruz v. New York*, 481 U.S. 186, 187–90, 107 S.Ct. 1714, 1716–18, 95 L.Ed.2d 162 (1987) (citations omitted).

Though the Supreme Court's holdings in *Bruton* and *Cruz* mention only *confessions*, the Sixth Circuit's more liberally worded holding in *United States v. Bartle*, 835 F.2d 646 (6th Cir.1987) ("[I]n a joint trial of codefendants A and B, admitting testimony from a third party that A made *certain statements* incriminating both himself and B would violate B's sixth amendment right of confrontation unless A testified, thereby becoming subject to B's cross-examination."), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988), extends *Bruton's* impact in this circuit.

Notwithstanding the applicability of *Bruton*, I find that any error regarding the admission of Kinser's two statements was harmless error as the district court properly concluded. *See Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) ("We reject the notion that a *Bruton* error can never be harmless.").

After noting the standard of review applicable to harmless error analysis, the district court judge noted, at length, his reasons for finding any error regarding the admission of Kinser's statements harmless:

Aside from the evidence of which the petitioner complains, evidence was introduced at the trial establishing that the petitioner was seen with codefendants Kinser and Johnson in petitioner's 1977 Maroon Dodge earlier on the day of the murder; that the petitioner with the co-

defendants purchased illegal liquor on two occasions and parked the maroon Dodge in the front of the house while making the purchase; that the petitioner and the codefendants got drunk at Louise Wilson's house and talked of robbing Hayes; that the petitioner talked about robbing Hayes in front of Sowders and that Sowders saw a night stick under the driver's seat of petitioner's car; that two days before the murder the petitioner stated he would commit the robbery immediately and in fact drove with Sowders to the grocery store but did not commit the robbery; that the petitioner obtained a roll of gray duct tape from Walter Johnson, cut it in half and put it in his car; that the gray duct tape roll found in the pot-bellied stove at the victims' house matched the roll of tape which remained with Walter Johnson; that both rolls of tape matched that which was used by the assailants to tape the victim's feet, hands and mouth; that fibers found on the tape on the victim matched fibers found in the petitioner's maroon Dodge; that the petitioner and the codefendants arrived at the bootlegger's house around 11:00 p.m. or 11:30 p.m., parked the maroon Dodge in the back, a place that no one parks with any regularity except the occupants; that the petitioner said that Sheriff Buddy Allford just went down the road and that if the codefendants were going with him they had better get in quickly; that the petitioner and the codefendants were in a noticeable hurry and that they left the bootleggers in a noticeable hurry; that the codefendants paid off their debts to the bootlegger and purchased liquor with a roll of dimes but had to pawn items earlier in the day to purchase liquor; that the petitioner and the codefendants arrived at Louise Wilson's house at around 11:00 p.m. or 11:30 p.m., that they were in a hurry, parked the vehicle in the rear and asked for a bag in which to put money and change; and that the victim died around 11:00 p.m. In addition to the above-mentioned evidence, evidence was introduced regarding each of the other defendants. It is within the province of

the jury to make reasonable inferences from the evidence as a whole in order to determine whether each of the defendants is guilty of each of the charges against them in the indictment.... The facts prove, and the jury so found, that the three defendants planned to rob Hayes, that they obtained grey duct tape to bind the victim, that they obtained money from the victim, and that they were hurried following the crime. There is no evidence to suggest that anyone else committed the robbery, burglary, conspiracy and the murder. It is beyond peradventure that the jury would conclude from these proven facts that the three defendants killed Mr. Hayes in the process of committing the other crimes. Common sense and logic would lead a reasonable person to believe that absent evidence that someone else was present the defendants committed the murder or aided and abetted one another in the commission of the murder. Considering the overwhelming evidence against the petitioner and the right of the jury to draw inferences from proven facts, the court concludes that the error in admitting the statement of Eva Kinser without redaction is harmless beyond a reasonable doubt.

District Court's June 13, 1990 Memorandum and Order at 5–7.

Because the prosecution presented overwhelming evidence of Vincent's participation in the crimes, any error regarding the admission of Kinser's two out-of-court statements was certainly harmless as the district court properly concluded. Accordingly, I would reject the petitioner-appellant's first assignment of error.

### B.

Vincent next argues that the trial judge's comment regarding Lesa Hodge's testimony irreparably tainted his trial. The judge's comment was made as defendant Johnson's attorney, Mr. Rueff, cross-examined Hodge regarding her inconsistent statements concerning the crimes: Hodge first told police that she knew nothing of the defendants' involvement; she later told

the police that the defendants were involved; still later, she told defendant Johnson's attorney that the defendants were not involved; at trial, however, Hodge testified that the defendants were, indeed, responsible for the crimes.

Following Hodge's incriminating testimony on direct examination, defendant Johnson's attorney attacked Hodge's credibility on cross-examination by noting Hodge's inconsistent statements. After Hodge explained that the discrepancies existed because her exculpatory statements were not true, the following exchange occurred in the jury's presence:

COURT: What relevancy has this, Mr. Rueff?

RUEFF: Judge, she has given me a different statement today, or answer, to what she gave me—she said she took Danny Cornwell to the police office.

. . . .

COURT: I don't see the relevancy of that. She has admitted the entire statement she gave is probably not true. So stay on something that is relevant.

See District Court's June 13, 1990 Memorandum and Order at 10; Magistrate's February 2, 1990 Report and Recommendation at 22; Appellant's Brief at 28; Appellee's Brief at 24.

Though Vincent argues that "the trial court made a prejudicial comment on the evidence in front of the jury," Appellant's Brief at 27, because the comment "obviously could lead the jury to conclude that the court believed Lesa when she said the statement exonerating the defendants was not true," *id.* at 28, the Kentucky Supreme Court and the district court judge determined that the trial judge's comment was "simply a recitation of what the witness had said and was not a characterization of the witness' credibility." District Court's June 13, 1990 Memorandum and Order at 10.

Because a "trial judge is not a mere moderator or observer, but is responsible for the tone and tempo of the proceedings, [a judge] may comment on the evidence and may exercise his discretion to curtail pursuit of irrelevant matters." *United*

*States v. Butera,* 677 F.2d 1376, 1382 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Accordingly, the district court judge correctly concluded that the state trial court judge's statement merely represented "the proper exercise of the Court's power to control the pace of the trial and avoid unnecessary examination." District Court's June 13, 1990 Memorandum and Order at 10.

I would therefore reject the petitioner-appellant's second assignment of error.

## C.

Vincent next argues that his conviction must be reversed because the prosecutor engaged in "improper and prejudicial conduct, especially when viewed in conjunction with the other serious errors committed during petitioner-appellant's trial, [which] deprived petitioner-appellant of due process of law in violation of the United States Constitution." Appellant's Brief at 36–37. It is well settled, however, that a defendant is not entitled to a new trial unless the prosecutorial misconduct is "so pronounced and persistent that it permeated the entire atmosphere of the trial." *United States v. Vance,* 871 F.2d 572, 577 (6th Cir.) (quoting *United States v. Mahar,* 801 F.2d 1477, 1503 (6th Cir.1986)), *cert. denied,* ––– U.S. –––, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

Specifically, Vincent cites two instances of alleged prosecutorial misconduct. The first alleged misconduct occurred during opening argument when the prosecutor stated that he would prove that Vincent told Lesa Wood that the three co-defendants would slit Hayes' throat to "get it over with." Because "the prosecutor failed to support his statement with evidence from the witness stand," Appellant's Brief at 31, Vincent argues that "it is highly improper for a prosecutor to make reference to damaging evidence in an opening statement which he fails to support with evidence from the witness stand," *id.,* adding that "[t]here can be no doubt about the prejudicial nature of the unsubstantiated comment made by the prosecutor in his opening statement. Petitioner-appellant was charged with murder and the prosecu-

tor's unsubstantiated statement indicated that petitioner-appellant intended to murder the victim." *Id.*

The district court, however, found no prosecutorial misconduct:

> The Kentucky Supreme Court reviewed the comment of the prosecutor and noted that the comment was offered based on the report of Detective Gaddie and the good faith belief of the prosecutor that Lesa Wood would testify to the statement as made. The Kentucky Supreme Court found no error when it considered that the statement was followed by ten days of trial in which overwhelming evidence was introduced against the defendants. This Court upon review of the record likewise finds no error.... In the case at bar, the jury was instructed that the comments of counsel were not to be considered as evidence. Furthermore, the statement was founded on a good faith belief that the evidence would be introduced at the trial. No other references to the statement were made during the remainder of the trial. Lastly, the evidence of guilt against the petitioner was overwhelming as discussed in greater detail above. Therefore the Court finds no error in the statement.

District Court's June 13, 1990 Memorandum and Order at 8–9.

The second alleged prosecutorial misconduct occurred when the prosecutor remarked, during trial, that "if we are going to play tapes of witnesses, the Commonwealth would like to get in the act." The district court found this claim to be meritless and, *sub silentio,* affirmed the magistrate's decision:

> The petitioner argues that it was improper for the prosecutor to offer what he knew was inadmissible evidence in front of the jury and that doing so deprived him of due process of law.
> The petitioner correctly cites Kentucky case law reversing a conviction in which similar conduct occurred. This court is, however, concerned not with errors of state law but with errors which offend the mandate of the United States Constitution. The conduct here does not consti-

tute error of constitutional dimension. This was a single momentary incident within the course of a ten day trial. The prejudice caused to the petitioner, if any, is very speculative in light of the ambiguous nature of the prosecutor's comment and gesture. The action of the prosecutor does not, therefore, justify issuance of the writ.

Magistrate's February 2, 1990 Report and Recommendation at 19–20.

Because the district court judge correctly concluded that any prosecutorial misconduct in the petitioner-appellant's state court trial did not "permeate[ ] the entire atmosphere of the trial," *United States v. Thomas,* 728 F.2d 313, 320 (6th Cir.1984), and deny Vincent a fair trial, *Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the district court judge properly denied the petitioner's prosecutorial misconduct claim. I would therefore reject Vincent's third assignment of error.

**D.**

During the prosecution's presentation of its case, Detective Gaddie testified that he had "come up with several real good pieces of evidence that connected the defendants to the crime" during his investigation. The trial court judge immediately admonished the jury to "consider that merely as an opinion or a conclusion of the Detective," adding that "you will be the sole judge of whether or not any of this evidence connects the defendants or any of them to the crime."

Detective Gaddie later noted that: "At this point in time the three defendants were suspects in the case. I knew enough about the case to think that they possibly had committed this murder." The trial court judge immediately offered a second strong admonition to the jury:

> Ladies and gentlemen of the Jury, you will disregard and not consider the statement of Detective Gaddie as to his opinion as to who committed this crime. You will, of course, listen to all the evidence and you will make the determination as to who, if anyone, committed this crime and you will disregard the opinions of

Detective Gaddie, and I will admonish the witness that in his future testimony not to give his opinion about those ultimate facts. Just confine it more to what he did in the course of his investigation, rather than giving opinions or conclusions.

*See* Magistrate's February 2, 1990 Report and Recommendation at 16; Appellee's Brief at 33.

Though the petitioner-appellant relies heavily on *Cooper v. Sowders,* 837 F.2d 284, 286–87 (6th Cir.1988) (police officer's "opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence" and deprived petitioner of his "right to fundamental fairness"), the magistrate concluded (and the district court judge agreed, *sub silentio*) that:

> The detective in the case at bar likewise suggested to the jury the guilt of the petitioner. Here, however, the trial court admonished the jury not to consider the detective's opinion as to petitioner's guilt or innocence. Such admonition is in *strong* contrast with the comment made by the court in *Cooper* which was clearly impermissible and may well have reinforced the detective's opinion in the jury's minds.
>
> The court in *Cooper* also held that the trial court erred a third time in allowing the introduction of other evidence at trial. The court held that, when considered *cumulatively,* the three errors produced a trial setting that was fundamentally unfair. Petitioner's argument that the holding in *Cooper* mandates that the writ issue as to him is, therefore, misplaced.

Magistrate's February 2, 1990 Report and Recommendation at 18 (citation omitted) (emphasis in original).

Because Detective Gaddie's remarks (in light of the trial court judge's immediate admonitions to the jury) did not render Vincent's trial "so fundamentally unfair as to constitute a denial of federal rights," *Logan v. Marshall,* 680 F.2d 1121, 1123 (6th Cir.1982) (per curiam) (citation omitted), I would reject Vincent's fourth assignment of error.

E.

Though Vincent argues that his convictions for murder, first degree burglary, and first degree robbery unconstitutionally placed him in double jeopardy, the Supreme Court of Kentucky held that it was barred from considering the petitioner's claim:

> Finally, Vincent argues that his constitutional guarantee against double jeopardy was violated when he was convicted of first-degree burglary, first-degree robbery and murder. Vincent concedes that this issue is not preserved for review by objection, but of course a double jeopardy violation can be reviewed despite the lack of preservation.
>
> However, Vincent's contention lacks all merit. He submits that the three crimes for which he was convicted were the "same" for double jeopardy purposes. Contrary to that assertion, first-degree burglary, first-degree robbery and murder are three separate offenses. Vincent engages in a hypertechnical and rhetorical discussion in order to create an issue and in doing so totally ignores the obvious statutory fact that murder is not an included incident to the commission of either burglary or robbery. He bases his argument on the wording of the instructions to the jury. *However, according to a clear reading of the record, it was Vincent's counsel who submitted the instruction given by the court. He cannot now be heard to complain.*

*Kinser v. Commonwealth,* 741 S.W.2d at 654 (emphasis added). The magistrate and the district court judge (*sub silentio*) agreed:

> The petitioner's final argument is that his conviction for the offenses of murder, first-degree burglary, and first-degree robbery placed him in double jeopardy of life or limb as proscribed by the United States Constitution.
>
> . . . .
>
> The state court procedural bar precludes this court's review of this issue absent a showing of "cause" and "prejudice." Petitioner has not made such a showing. The court may not, therefore, consider the merit of this allegation.

Magistrate's February 2, 1990 Report and Recommendation at 24 (citation omitted).

A state court's factual findings are presumed to be correct, absent evidence to the contrary, in a habeas corpus action. *See* 28 U.S.C. § 2254(d). We may assume, therefore, that Vincent's attorney did indeed submit the jury instructions that Vincent now complains of. Because Vincent has failed to demonstrate "cause" and "prejudice," *see Melchior v. Jago,* 723 F.2d 486, 490 (6th Cir.1983) ("[f]ailure to comply with state procedural rules may bar federal habeas review of the underlying federal claim, absent a showing of 'cause' for the failure and actual 'prejudice' resulting from the alleged constitutional violation"), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984), I would reject Vincent's fifth assignment of error.

### F.

Arguing that "[t]he bifurcated trial procedure utilized in this case deprived petitioner-appellant of his constitutional right to a fair and impartial jury," Appellant's Brief at 50, Vincent argues that:

[i]t is impossible to measure the prejudice caused to petitioner-appellant by this bifurcated procedure in which evidence was allegedly withheld as to Kinser when the jury decided the questions of petitioner-appellant's guilt or innocence and a penalty. The jury certainly could have speculated that the withheld evidence was evidence damaging to petitioner-appellant and Johnson. The jury after all had already heard evidence that the nontestifying Kinser had made a statement putting the blame on petitioner-appellant and Johnson for what happened to Mr. Hayes, and had seen the prosecutor hold up his briefcase and say he wanted to get in on the act of playing tapes of witness' statements.

*Id.* at 49–50.

Vincent's argument relies heavily upon the Sixth Circuit's holding in *United States v. Crane,* 499 F.2d 1385 (6th Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974), which held, *inter alia,* that:

We have carefully scrutinized the record in this case and find that the defendant's cause was not prejudiced by the manner in which the trial was conducted. Brown, whose case was tried first, was found not guilty. Consequently we do not believe that the jury drew an adverse inference from Brown's association with defendant as developed at trial. Moreover, we find that the record contains convincing evidence to support the jury's guilty verdict as to defendant.

Despite the lack of prejudice to defendant arising from the trial technique employed here, we entertain serious doubts about the propriety of the general use of a bifurcated trial as a means of preserving joint trials while still complying with the mandate of *Bruton.* If a jury were to find one of the defendants guilty, there could be a serious question whether the same jury could later give his codefendant the dispassionate and unprejudiced hearing required by due process and by the sixth amendment. In such a case the risk of prejudice would be unacceptably high. And of course the trial judge cannot predict at the beginning of the trial what the jury's verdict will be as to the defendant whose case is first presented. Conceivably, a procedure may be discovered that will make possible a reconciliation of the efficient use of court time and the constitutional guarantee of the right to confrontation. In the meantime, whenever there is a possibility of prejudice to either defendant, the safest course would appear to be the traditional use of the severance device.

*Id.* at 1388.

The Supreme Court of Kentucky dismissed this claim with very little discussion: "The bifurcated proceeding used by the trial court did not prejudice or violate any substantial rights of any of the defendants. It was within the special reasons and discretion of the trial judge as contemplated by RCr 9.42 and did not constitute the occasion for any particular reversible error." 741 S.W.2d at 654. After attempting to distinguish the instant action from

*Crane,* the magistrate concluded: "The general caveat of *Crane* that 'whenever there is a possibility of prejudice to either defendant, the safest course would appear to be the traditional use of the severance device' is applicable. The procedure by which the petitioner was tried does not affront that caveat. It was not unconstitutionally prejudicial to the petitioner." Magistrate's February 2, 1990 Report and Recommendation at 15. The district court judge accepted the magistrate's conclusion *sub silentio.* Though Vincent's constitutional rights were nearly abridged in violation of *Crane,* Vincent has failed to prove prejudice. In fact, defendant Kinser would appear to have the strongest argument in this respect because the jury deliberated his guilt or innocence after finding his two co-defendants guilty of the crimes charged.

Because Vincent's verdict was reached without the substance of Kinser's confession, and because the appellee correctly argues that Vincent "offers no indication that he was in any way prejudiced by the procedure," Appellee's Brief at 36, I would reject Vincent's final assignment of error.

### III.

For the aforementioned reasons, I respectfully dissent.