Stanley JACKSON, III, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–0605–MR.

Supreme Court of Kentucky.

June 15, 2000.

V. Gene Lewter, Lettricea Jefferson–Webb, Fayette County Legal Aid, Inc., Lexington, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Kathryn Holland Dunnigan, Office of Attorney General, Frankfort, Counsel for Appellee.

## OPINION OF THE COURT

Stanley Jackson, III, was convicted in the Fayette Circuit Court of second-degree escape and of being a persistent felony offender (PFO) in the first degree. He was sentenced to five years' imprisonment for the escape, which was enhanced to twenty years by the PFO conviction. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Jackson was indicted by a Fayette County grand jury in December of 1997 for one count of first-degree robbery and one count of being a first-degree persistent felony offender. During his pretrial incarceration, he was released on a six-hour pass and failed to return. He was rear- rested on August 10, 1998 and subsequently indicted for second-degree escape. Over Appellant's objection, the Fayette Circuit Court ordered the robbery, PFO, and escape indictments consolidated for the purpose of trial.

Following a one-day trial, Appellant was acquitted of the robbery charge, but was convicted of second-degree escape. During the penalty phase, the Commonwealth presented evidence of two prior felony convictions, a 1991 conviction of theft by unlawful taking and a 1986 conviction of complicity to first-degree robbery. The jury returned a verdict sentencing Appellant to five years for second-degree escape, enhanced to twenty years pursuant to a guilty verdict on the PFO charge. Appellant asserts two claims of error on appeal, *viz:* (1) that he was unduly prejudiced by the joinder for trial of his indictments for robbery and escape; and (2) that the PFO charge should have been dismissed.

## I. JOINDER.

■ The jury deliberated for five hours during the guilt phase of the trial, but for only ten minutes during the penalty phase before finding Appellant guilty of first-degree PFO and imposing the maximum enhanced sentence of twenty years. Appellant argues that the jury's "rush to judgment" in the penalty phase indicates they must have felt "duped" after acquitting him of first-degree robbery in the guilt phase, then learning of his prior convictions of theft and complicity to first-degree robbery during the penalty phase. He posits that the jury concluded that they had mistakenly acquitted him of the robbery, charge and that their decision to impose the maximum enhanced sentence of twenty years was intended as punishment for both the escape and the robbery.

■ Criminal Rule 9.12 permits two or more indictments to be consolidated for trial if the offenses could have been joined

in a single indictment. Rule 6.18 permits joinder of two or more offenses in the same indictment if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan. A trial court has broad discretion with respect to joinder and a decision in that regard will not be reversed absent a showing of prejudice and clear abuse of discretion. *Cannon v. Commonwealth*, Ky., 777 S.W.2d 591, 596–97 (1989).

■ The joinder clearly did not prejudice Appellant with respect to the robbery charge, because the jury acquitted him of that offense. Nor could it have prejudiced him on the escape charge, because the evidence of the escape was uncontroverted at trial. The same evidence of Appellant's prior convictions would have been admissible in the penalty phase of Appellant's trial for escape regardless of joinder. Appellant's speculation that the jury must have sentenced him to the maximum enhanced penalty because they concluded from his prior convictions that they had mistakenly acquitted him of the robbery charge is simply that—speculation unsupported by any fact in the record. "No conclusion of prejudice ... can be supported by mere speculation." *Kinser v. Commonwealth*, Ky., 741 S.W.2d 648, 653 (1987), *habeas granted sub nom. on other grounds, Vincent v. Parke*, 942 F.2d 989 (6th Cir.1991). The jury's relatively brief deliberation of Appellant's penalty virtually precludes the possibility of any re-deliberation of the robbery charge and could as easily be explained by the facts that (1) the penalty phase evidence was uncontroverted, and (2) the jury did not begin their penalty phase deliberations until the late hour of 11:19 p.m.

## II. PFO.

■ Appellant complains that although the first-degree robbery and first-degree PFO charges were contained in the same indictment, the audiotape of the grand jury proceedings does not reflect that any evidence supporting the PFO charge was presented to the grand jury. His pretrial motion to dismiss the PFO count on this ground was denied.

Criminal Rule 5.10 states that "[t]he grand jurors shall find an indictment where they have received what they believe to be sufficient evidence to support it." Appellant argues that the grand jurors could not possibly have believed that they had received sufficient evidence to support the PFO indictment if no evidence at all was presented to them. This issue was addressed and resolved in *Rice v. Commonwealth*, Ky., 288 S.W.2d 635 (1956):

[T]his court has on several occasions held that the court has no power to go behind an indictment for the purpose of inquiring into the competency of the evidence before the grand jury.... [T]he court will not inquire into the legality or sufficiency of the evidence on which an indictment is based even if it is averred that no legal evidence was produced before the grand jury.

*Id.* at 638 (citations omitted). Although the Court in *Rice* was addressing section 107 of the former Criminal Code of Practice and its mandate that the grand jury "receive none but legal evidence," the logic and rationale of *Rice* applies as well to the requirement of RCr 5.10. Both rules are "directed to the grand jury and not to the courts," and therefore it is not for the courts to look behind the face of the indictment. *Rice, supra,* at 638.

■ Appellant next cites RCr 5.16(1) which states that "[t]he attorney for the Commonwealth shall cause all of the testimony before a grand jury to be recorded," and RCr 5.16(2), which states that "[f]ailure to have a record made ... shall be ground for dismissal of the indictment un-

less the Commonwealth can show good cause for the failure." The Commonwealth's attorney offered no explanation for the failure to record the presentation of the PFO evidence to the grand jury. Appellant asserts that this omission *required* dismissal of the indictment. However, the rule provides that "[f]ailure to have a record made ... *shall be ground for dismissal* of the indictment." (Emphasis added.) If dismissal were *required* under those circumstances, the rule would read: "Failure to have a record made ... *shall result in dismissal* of the indictment." The rule was not intended to require automatic dismissal, but only to establish a *ground* for dismissal with the ultimate decision in that regard left to the sound discretion of the trial court.

■ The PFO evidence consisted solely of the certified judgments of Appellant's prior convictions, not, *e.g.*, factual testimony of an eye-witness to an offense. The fact of the prior convictions was uncontroverted and Appellant does not assert that the information contained in the PFO indictment was incorrect. Thus, he was not prejudiced by the Commonwealth's failure to record the grand jury evidence. We, therefore, conclude that the trial judge did not abuse his discretion in denying Appellant's motion to dismiss the indictment.

■ Appellant further asserts error in permitting PFO enhancement of his sentence for second-degree escape, because the PFO count was contained only in the indictment for robbery and not in the indictment for escape. In *Price v. Commonwealth*, Ky., 666 S.W.2d 749 (1984), we addressed a similar argument:

> While it is true that KRS 532.080 is an enhancement provision and that a present felony conviction is required to trigger its operation, this does not mean that a PFO charge cannot be set out in a separate indictment. If the legislature had intended that PFO charges be presented only in the indictment which charges the underlying substantive offense, it could have set out this requirement in specific terms just as it stated that a defendant's status as a PFO is to be determined in a proceeding ancillary to the proceeding in which the defendant's guilt on the substantive offense is decided.

*Id.* at 750. The facts in *Price* were slightly different from those herein, in that the PFO charge in *Price* was the sole count in a separate indictment rendered subsequent to Price's initial indictment for the underlying offense of robbery. Here, the PFO count was included as a separate count in the initial indictment for robbery, whereas the underlying offense of second-degree escape of which Appellant was ultimately convicted was charged in a separate and subsequent indictment. We regard this factual distinction as immaterial.

> We interpret the PFO statute as requiring that if the Commonwealth seeks enhancement by proof of PFO status, the defendant is entitled to notice of this before the trial of the underlying substantive offense. A separate indictment meets this requirement just as does a separate count in the indictment charging the substantive offense to which it refers.

*Id.* The PFO indictment here, though contained in a separate indictment than that charging the underlying offense of which Appellant was convicted, gave Appellant notice well before trial of the Commonwealth's intent to seek enhancement of any sentence imposed upon conviction of any underlying substantive offense. As in *Price*, it is immaterial that the underlying offense was charged in a separate indictment than the PFO charge.

Accordingly, the judgment of conviction and the sentence imposed by the Fayette Circuit Court are affirmed.

COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs in part and dissents in part by separate opinion.

STUMBO, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent and in which KELLER, J., joins in part.

KELLER, Justice, concurring in part and dissenting in part.

While I concur with Section One of the majority opinion which holds that the trial court properly joined the robbery and escape charges for trial, I disagree with the majority's analysis of RCr 5.16. Although I agree with Justice Stumbo's interpretation of RCr 5.16, I write separately to further discuss the authority cited by the majority and to express my opinion that, in this case, Jackson could be retried upon remand as a persistent felony offender (PFO) if the Commonwealth properly secured his reindictment as a PFO.

I merely wish to supplement Justice Stumbo's analysis of RCr 5.16 by demonstrating that the authority cited by the majority opinion for its conclusion that "it is not for the courts to look behind the face of the indictment," was written in an era when Commonwealth's Attorneys had greater latitude with respect to the preservation of grand jury testimony. *Rice v. Commonwealth*,[1] predates the adoption of RCr 5.16, and, in *Rice*, our predecessor court did not address the issue now before this Court. The majority correctly notes that the *Rice* court interpreted Section 107 of the former Code of Practice in Criminal Cases, but ignores the relevance of Section 110 of the former Code which allowed the Commonwealth's Attorney sole discretion regarding whether grand jury testimony was transcribed:

[A]uthority is hereby given to the Commonwealth's attorney to appoint a stenographer, who shall on *order of the said Commonwealth's attorney*, attend any session of the grand jury ... and be present during the examination of any witness or witnesses before the grand jury and shall make full and correct notes of the testimony of the witnesses[.][2]

The present Rules of Criminal Procedure *require* the Commonwealth's Attorney to record the testimony before the grand jury[3] and I believe RCr 5.16 requires the trial court to dismiss an indictment when the Commonwealth's Attorney fails to do so unless good cause is shown for the failure.[4] The majority's interpretation of RCr 5.16 renders it meaningless.

I agree with Justice Stumbo that the trial court should have set aside Jackson's PFO indictment, and Jackson, therefore, cannot be retried as a PFO under Fayette Circuit Court Indictment Number 98–CR–1085. I disagree, however, with Justice Stumbo's suggestion that, if this Court reversed Jackson's PFO conviction for failure to abide by RCr 5.15, the Commonwealth could never seek PFO enhancement of Jackson's sentence for second degree escape. While I would reverse Jackson's first degree PFO conviction, I do not believe such a reversal would preclude the Commonwealth from seeking reindictment of Jackson as a PFO for the purpose of enhancing the penalty for the underlying escape offense.

Although the PFO statute requires a separate proceeding from the proceeding that resulted in the sentence to be enhanced,[5] and expresses a preference for conducting PFO proceedings before the

1. Ky., 288 S.W.2d 635 (1965).

2. The Code of Practice in Criminal Cases § 110.(Emphasis added).

3. RCr 5.16(1).

4. RCr 5.16(2).

5. KRS 532.080(1). ("When a defendant is charged with being a persistent felony offender, the determination of whether or not he is such an offender and the punishment to be

same jury that imposed the sentence to be enhanced,[6] the statute recognizes that such procedure is not always possible and authorizes, for good cause, the PFO proceedings to be conducted before a new jury empaneled for that purpose.[7] I can find no reason that the Commonwealth, if necessary, could not seek a reindictment of the PFO charge since the defendant undisputedly had notice prior to his trial that the Commonwealth would seek enhancement of any felony sentence imposed on the underlying charges.

We have previously held that a PFO charge may properly be presented by an indictment separate from the indictment for the underlying substantive offense:

> KRS 532.080, the PFO statute, requires that a defendant be charged as a persistent felon, but does not require that the charge be included in the same indictment which charges the underlying substantive offense. While this procedure may be preferred, we are aware of no cases holding that failure to include a PFO charge in the indictment charging the underlying substantive offense renders a subsequent PFO conviction void. The only cases cited by Price which touch upon this issue were decided well before enactment of KRS 532.080 and are not controlling. While it is true that KRS 532.080 is an enhancement provision and that a present felony conviction is required to trigger its operation, this does not mean that a PFO charge cannot be set out in a separate indictment. If the legislature had intended that PFO charges be presented only in the indict-

ment which charges the underlying substantive offense, it could have set out this requirement in specific terms just as it stated that a defendant's status as a PFO is to be determined in a proceeding ancillary to the proceeding in which the defendant's guilt on the substantive offense is decided.

> We interpret the PFO statute as requiring that if the Commonwealth seeks enhancement by proof of PFO status, the defendant is entitled to notice of this before the trial of the underlying substantive offense. A separate indictment meets this requirement just as does a separate count in the indictment charging the substantive offense to which it refers.

> The real issue in this case is whether Price was substantially prejudiced by the Commonwealth's procedure of separately indicting him for first-degree robbery and as a first-degree PFO. Given the fact that Price was arraigned on the PFO charge nearly one full month before he proceeded to trial, we do not conclude that he was in any way deprived of notice of or an opportunity to defend against the charge.[8]

Although KRS 532.080 indicates a legislative preference that PFO proceedings be conducted before the same jury that found the defendant guilty of the underlying substantive offense [9] and suggests a preference that a PFO charge be indicted prior to the trial of the underlying substantive offense, the legislature did not specifically require such a procedure, and the realities of criminal prosecution require procedural

imposed ... shall be determined in a separate proceeding from that proceeding which resulted in his last conviction." *Id.*)

**6.** *Id.* ("Such proceeding shall be conducted before the court sitting with the jury that found the defendant guilty of his most recent offense ...." *Id.*)

**7.** *Id.* ("[U]nless the court for good cause discharges that jury and impanels a new jury for that purpose." *Id.*)

**8.** *Price v. Com.*, Ky., 666 S.W.2d 749, 750 (1984).

**9.** *Supra* note 6.

flexibility.[10]

In holding that West Virginia's procedure of allowing an indictment of a PFO charge subsequent to a conviction of the underlying substantive offense did not violate due process, the United States Supreme Court stated:

> Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. Thus, although the habitual criminal issue may be combined with the trial of the felony charge, 'it is a distinct issue, and it may appropriately be the subject of separate determination.' If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding. As interpreted by its highest court, West Virginia's recidivist statute does not require the State to notify the defendant prior to trial on the substantive offense that information of his prior convictions will be presented in the event he is found guilty.[11]

Under the circumstances of this case, the Commonwealth should be allowed to seek reindictment of Jackson for first degree PFO because Jackson had notice, prior to his trial on the underlying substantive offense, that the Commonwealth would seek enhancement of any felony conviction. With such notice, Jackson would not, therefore, be prejudiced by his reindictment.

I would reverse Jackson's first degree PFO conviction and the twenty year sentence imposed, but affirm the second degree escape conviction and remand the case to the trial court for resentencing, not only on the underlying escape charge, but if the Commonwealth secures reindictment of the first degree PFO charge, and Jackson is found to be a first degree PFO, then for resentencing as a persistent felony offender as well.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I disagree with the majority opinion on both issues raised by Appellant. First, although joinder of offenses is within the sound discretion of the trial court, there are limits to that discretion. *Sears v. Commonwealth,* Ky., 561 S.W.2d 672, 674 (1978) (citing *Rigsby v. Commonwealth,* Ky., 495 S.W.2d 795 (1973) and *Cargill v. Commonwealth,* Ky., 528 S.W.2d 735 (1975)). Here, the offenses of robbery and escape were clearly not of same or similar character. Nor were the charged crimes based upon the same acts or transactions, or part of a common scheme or plan. The offenses were not closely related in time—the robbery occurred on October 30, 1997, whereas the escape occurred June 24, 1998. While it is true that evidence of the escape would have been admissible in the robbery trial as evidence of Appellant's guilt, *Napier v. Commonwealth,* Ky., 306 Ky. 75, 79–80, 206 S.W.2d 53 (1947), the converse is not true—evidence of the robbery would not have been admissible in the escape trial. Rather, the jury would have heard simply that Appellant was incarcerated pending a trial on undisclosed charges.

Here, as in *Sears v. Commonwealth, supra,* the joinder of the escape charge

---

10. *Oyler v. Boles,* 368 U.S. 448, 452–453, 82 S.Ct. 501, 503–504, 7 L.Ed.2d 446 (1962) ("Any other rule would place a difficult burden on the imposition of a recidivist penalty. Although the fact of a prior conviction is within the knowledge of the defendant, often this knowledge does not come home to the prosecutor until after the trial, and in many cases the prior convictions are not discovered until the defendant reaches the penitentiary." *Id.* at 368 U.S. 448, 452 note 6, 82 S.Ct. 501, 7 L.Ed.2d 446.).

11. *Oyler v. Boles, supra* note 10 (citations omitted).

with the armed robbery charge was clearly error. *Sears,* 561 S.W.2d at 674. Unlike in *Sears,* which held the error harmless due to the overwhelming evidence of guilt on all charges, the prejudice here was obvious and overwhelming. The majority concludes that no prejudice occurred here because Appellant was acquitted of the robbery and because the evidence of escape was uncontroverted. With this much, I agree. However, Appellant does not claim he was prejudiced in the guilt phase of the trial, but only in the penalty phase. The jury, which deliberated for five hours on the guilt phase issues, clearly struggled with its decision to acquit Appellant of the robbery charge. It is disingenuous to pretend the jury then turned a blind eye to the robbery acquittal during the penalty phase and sentenced Appellant to the maximum enhanced penalty of 20 years solely on the escape count, after learning that Appellant had two previous convictions for robbery and theft. The majority holds that Appellant's contention of prejudice in the sentencing phase is mere speculation. I disagree and believe the prejudice to be obvious to anyone with common sense. Clearly the jury's decision to sentence Appellant to an enhanced sentence of twenty years was not intended to punish him solely for the escape and his PFO status, but also for the robbery charge of which it has just acquitted him. As the prejudice resulting from the improper joinder of the robbery and escape charges is clear, I would reverse Appellant's sentence for escape and remand for a new trial on the sentencing issue.

Secondly, I must object to the majority's holding that the trial court's failure to dismiss the PFO indictment was not error. The language of RCr 5.16 is clearly mandatory. The Commonwealth "shall" record the grand jury testimony. Failure to do so "shall" be ground for dismissal of the indictment *"unless* the Commonwealth can show good cause for the failure." (Emphasis added). Here, the prosecuting attorney did not even attempt to explain the failure, and the trial court let the failure pass without question. This was clearly error.

Appellant's maximum sentence would only have been five years had the PFO indictment been dismissed. The majority attempts to avoid this necessary result by distinguishing the language of RCr 5.16(2) from hypothetical language of its own invention. This approach is result-oriented, short-sighted, and a departure from the law as it is plainly written. No matter how unpalatable the proper resolution of a case may be, this Court is bound to enforce the mandatory language of our criminal rules. As Appellant was clearly prejudiced by the trial court's failure to dismiss the PFO indictment upon Appellant's timely request and clear recitation of the criminal rule precisely on point, I would prohibit retrial of the PFO charge upon remand for the new sentencing trial on the escape conviction.

LAMBERT, C.J., joins. KELLER, J., joins in part.